IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| John Douglas Butler, as Personal Representative of the Estate of Jon Trevor Butler, deceased, and William Michael Prince, Individually, | ) ) ) | Civil Action No. 4:09-1875-TLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ford Motor Company, Continental General Tire Company, Continental Tire North America, Inc., and Snow Tire Company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is currently before the Court on Defendant Ford Motor Company's (hereinafter "Ford") motion to dismiss Plaintiffs' second amended complaint (Doc. # 40); and on Defendant Snow Tire Company's (hereinafter "Snow Tire") motion to dismiss (or transfer) this action. (Doc. # 38). Plaintiffs filed the instant action on July 14, 2009. Plaintiffs filed an amended complaint on August 10, 2009, and a second amended complaint on December 3, 2009, which alleges (1) strict liability claims against both Defendants Ford and Snow Tire; (2) a negligent design claim against Defendant Ford; (3) negligent failure to warn claims against Defendants Ford and Snow Tire; (4) negligence claims against Defendants Snow Tire, Continental General Tire Company and Continental Tire North America, Inc; (5) claims for breach of the implied warranty of merchantability against Defendants Ford and Snow Tire; (6) a claim for breach of the implied warranty of fitness for a particular purpose against Defendant Snow Tire; (7) claims for

1

misrepresentation against all Defendants; and (8) a claim for fraud against Defendant Ford.

Subsequently, on December 14, 2009, Defendant Snow Tire filed the instant motion to dismiss (or

transfer) currently before the Court. (Doc. # 38). On December 15, 2009, Defendant Ford filed its

motion to dismiss Plaintiffs' second amended complaint (Doc. # 40). Plaintiffs filed a response in

opposition to Defendant Ford's motion to dismiss on December 16, 2009. (Doc. # 41). On

December 31, 2009, Plaintiffs filed a response in opposition to Defendant Snow Tire's motion to

dismiss (or transfer). (Doc. # 46). Defendant Ford filed a reply to Plaintiffs' opposition on January

8, 2010. (Doc. # 49). Defendant Snow Tire filed a reply to Plaintiffs' opposition on January 11,

2010. (Doc. # 52). The Court heard oral argument on these motions from counsel on May 13, 2010.

For the reasons set forth in this Order, Defendant Ford's motion to dismiss is granted, and Defendant

Snow Tire's motion to transfer venue is granted.

## Rule 12(b)(6) Standard

A motion to dismiss under Rule 12 tests the sufficiency of the complaint. Edwards v. City

of Goldsboro, 178 F.3d 231 (4th Cir.1999). In general, a motion to dismiss for failure to state a

claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which

would support its claim and would entitle it to relief. Mylan Laboratories, Inc. v. Matkari, 7 F.3d

1130 (4th Cir.1993). In considering a motion to dismiss, the court should accept as true all well-

pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Id. A

court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts

that could be proved consistent with the allegations. Id. Accordingly, a Rule 12(b)(6) motion

should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as

true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears

2

certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. Edwards v. City of Goldsboro, 178 F.3d at 231.

## Facts

The following facts as pled in Plaintiffs' Second Amended Complaint are presumed true for purposes of the instant motions. In the summer of 2007, Plaintiffs, who were members of the band "Bottom of the Hudson," (hereinafter "the Band") were on a ten day concert tour, traveling through the south-east portion of the country in the subject E350 van. The van had retread tires supplied by the Defendant, Snow Tire. On or about July 26, 2007, the right rear tire of the van, purchased from Snow Tire, suffered a "de-tread," and the Band was forced to utilize the spare tire on the vehicle until they could stop. They stopped at Defendant Snow Tire Company in Athens, Georgia where they purchased and had installed a replacement tire. On July 29, 2007, Plaintiff Prince, Plaintiff's Decedent, and others were traveling in the E350 through Sampson County, North Carolina when the left rear tire de-treaded. As the driver responded to the de-treading, the E350 rolled over several times before coming to rest in the right shoulder of the highway. During the roll-over event, two passengers were ejected from the E350, one of whom later died from injuries sustained in the rollover.

## Law/Analysis as to Defendant Ford's Motion to Dismiss

The Court will initially address Defendant Ford's motion to dismiss. As to Defendant Ford, Plaintiffs allege strict liability, negligent design, negligent failure to warn, breach of implied warranty of merchantability, misrepresentation, and fraud claims; all stemming from Defendant Ford's design, testing, manufacture, and sale of the E350 van at issue in these proceedings.

3

Defendant Ford asserts that because the substantive law of North Carolina applies and because North Carolina's statute of repose for products liability actions bars these claims, Plaintiffs have failed to assert claims against it upon which relief can be granted. Moreover, inasmuch as this accident occurred well after the expiration of the applicable statute of repose, Defendant Ford asserts that there was no valid claim for relief as of the date of filing of Plaintiffs' Second Amended Complaint. Accordingly, Defendant Ford asserts that it is entitled to an order dismissing Plaintiffs' claims against it in their entirety and with prejudice. In response, the Plaintiffs assert that although a complaint may be dismissed on statute of limitations grounds, and by analogy on statute of repose grounds, such action should be taken only if the complaint on its face shows that the action is time barred. Jones v. Bock, 549 U.S. 199 (2007). The Plaintiffs assert that applying these principles to each of the claims challenged by Ford under Rule 12(b)(6), the claims clearly state a cause of action. Specifically, Plaintiffs argue that as to the warranty claim against Ford, it is inconclusive on the allegations in the second amended complaint that North Carolina substantive law applies. Accordingly, Plaintiffs assert that Defendant Ford's motion to dismiss the second amended complaint should be denied. In reply to Plaintiffs' argument regarding the warranty claim, Ford asserts that Plaintiffs' allegations fail to state a valid claim for breach of any implied warranty under South Carolina law because Plaintiffs fail to allege that a sale of goods occurred sufficient to trigger application of South Carolina's Uniform Commercial provisions. In the alternative, Defendant Ford argues that even assuming arguendo that S.C. Code Ann. § 36-1-105 applies, that section would favor the application of North Carolina law and the dismissal of Plaintiffs' breach of implied warranty claims.

4

South Carolina law provides that the substantive law of the state in which an injury occurs controls a case brought within South Carolina's jurisdiction. "The substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred." Boone v. Boone, 546 S.E.2d 191, 193 (S.C. 2001); see also Mizell v. Eli Lilly & Co., 526 F. Supp. 589, 594-95 (D.S.C.1981); Gattis v. Chavez, 413 F. Supp. 33, 35 (1976); Algie v. Algie, 198 S.E.2d 529 (1973); Oshiek v. Oshiek, 136 S.E.2d 303 (1964). "Procedural matters are to be determined in accordance with the law of South Carolina, the lex fori." McDaniel v. McDaniel, 133 S.E.2d 809, 811 (1963) (noting lex fori to mean the law of the forum). Here, the accident at issue occurred in Sampson County, North Carolina. (Pl. 2d Am. Compl. ¶ 18). Accordingly, this Court must apply the substantive law of North Carolina and the procedural law of South Carolina.

Plaintiffs' claims against Defendant Ford are premised on principles of products liability. At the time the instant cause of action accrued, North Carolina had a six-year statute of repose for products liability actions.[1] N.C. Gen. Stat. Ann. § 1-50 (1996) ("No action for the recovery of

---

[1]In reviewing North Carolina General Statute § 1-50, the Court notes the following legislative developments: S.L. 2009-420, § 1, deleted subd. (a)(6), which prior thereto read: "(6) No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." S.L. 2009-420, § 2 indicates that "Article 5 of Chapter 1 of the General Statutes is amended by adding a new section to read:

§ 1-46.1 Twelve years

(a)    Within 12 years an action--

(1)    "No action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption."

Finally, S.L. 2009-420, § 3, provides: "This act becomes effective October 1, 2009, and applies

5

damages for personal injury, death or damage to property based upon or arising out of any alleged

defect or any failure in relation to a product shall be brought more than six years after the date of

initial purchase for use or consumption"); National Property Investors, VIII v. Shell Oil Co., 950 F.

Supp. 710 (E.D.N.C. 1996) (discussing the statute's applicability in relation to a defective plumbing

system claim); Bolick v. American Barmag Corp., 293 S.E.2d 415 (N.C. 1982) (discussing the

statute's applicability in relation to a defective yarn crimping machine claim);   Davidson v.

Volkswagenwerk, A.G., 336 S.E.2d 714 (N.C. Ct. App. 1985) review denied 342 S.E.2d 892 (N.C.

1986) (applying the statute to defective automobile claim).   "Whether a statute of repose is a

substantive or procedural matter is the deciding factor in what law applies."  Nash v. Tindall Corp.,

650 S.E.2d 81, 83 (S.C. Ct. App. 2007).   Inasmuch as North Carolina's statute of repose is a

substantive rule of law, it is controlling as to Plaintiffs' tort causes of action.  See e.g. Thornton v.

Cessna Aircraft Co., 703 F. Supp. 1228, 1230 (D.S.C. 1988).

North Carolina courts have consistently held this statute to be substantive and not procedural.

National Property Investors, III, 950 F. Supp. at 710.  (North Carolina's six-year statute of repose

for products liability actions is intended to be a substantive definition of rights setting fixed time

limits beyond which defendants will not be liable, giving defendants a vested right not to be sued

if a plaintiff fails to file within a six-year period); Davidson 336 S.E.2d at 714 (statute of repose

clearly states that no action for recovery of damages for personal injuries shall be brought more than

---

to causes of action that accrue on or after that date. This act shall not affect the application of
G.S. 1-50(a)(5). Nothing in this act is intended to change existing law relating to product liability
actions based upon disease."

six years after date of initial purchase of product and is intended to be a substantive definition of rights which sets fixed limit after time of the product's manufacture beyond which the seller will not be held liable); see also Bolick, 293 S.E.2d at 415 ("statutes of repose are intended to be substantive definition of rights as distinguished from procedural limitation on remedy used to enforce rights"). Furthermore, the South Carolina Supreme Court has treated North Carolina's statute of repose for products liability actions as substantive law. See e.g. Langley v. Pierce, 438 S.E.2d 242, 243 (S.C. 1993) (discussing the distinction between a statute of limitation and a statue of repose). Because North Carolina's statute of repose for products liability actions is substantive law, Plaintiffs' claims against Ford cannot be asserted more than six years after the date of the initial purchase of the E350. The E350 at issue in these proceedings was manufactured in 1991. (Pl.'s 2d Am. Comp. ¶¶ 5, 6, 10, 11, 13, 23, 25). The alleged accident occurred on or about July 26, 2007, or about sixteen years after Ford placed the E350 into the steam of commerce. Plaintiffs have failed to assert any facts allowing this Court to reasonably conclude that the E350 was initially purchased for use within six years of the 2007 accident. North Carolina's substantive statute of repose regarding products liability claims therefore bars Plaintiffs' suit against Ford. Thus, it appears that Plaintiffs cannot succeed as to their tort causes of action, and Ford is entitled to a dismissal with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    As discussed above, a federal court sitting in diversity lacks discretion and must follow the choice of law provisions of the forum state, in this case, South Carolina. In applying the South Carolina choice of law provision, this Court must apply the law of the state where the injury occurred –North Carolina – to Plaintiffs' tort-based claims. Rucker v. MGM Mirage, 2008 WL 2717595, at * 4 n. 4 (D.S.C. 2008) (citing Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 496 (1941)); Mizell

v. Eli Lilly & Co., 526 F. Supp. 589; Boone v. Boone, 546 S.E.2d 191; Hughes v. Doe, 316 S.E.2d 383 (S.C. 1984). However, there is one exception to this general rule which has been dubbed the "public policy exception," and stands for the proposition that foreign law will not be applied if such law is repugnant to South Carolina's public policy. Thornton v. Cessna Aircraft Co., 703 F. Supp. 1228 (D.S.C. 1988) aff'd 886 F.2d 85 (4th Cir. 1989). The Court will examine this exception to see if it alters its conclusion as to plaintiff's tort causes of action noted above.

South Carolina law holds that "foreign law may not be given effect …'if it is against good morals or natural justice.'" Boone v. Boone, 546 S.E.2d at 193-94 (citing Dawkins v. State, 412 S.E.2d 407, 408 (S.C. 1991)); Rauton v. Pullman Co., 191 S.E. 416, 422 (S.C. 1937) (court will refuse to follow law of lex loci delicti when it is against good morals or natural justice, or "for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens"). Moreover, "[t]he good morals or natural justice of our State are not violated when foreign law is applied to preclude a tort action for money damages, whether against an individual or the State, even if recovery may be had upon application of South Carolina law." Id. "'[T]he fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other.'" Id. In a recent South Carolina Court of Appeals case, the court compared South Carolina's statute of repose for alleging defective or unsafe conditions of an improvement to real property and North Carolina's equivalent statute of repose. Nash v. Tindall Corp., 650 S.E.2d at 83-84. North Carolina's statute of repose, as substantive law, was to be applied to the case brought in South Carolina under the principle of lex loci delicti. Id. at 84. However, it was argued that North Carolina's statute violated South Carolina's public policy because of a difference of two years between the two statutes, eight years in South Carolina and six years in North

8

Carolina. Id. The court held that "public policy is not violated by the two year difference" and more importantly, attempting to bring this case under South Carolina's substantive law "constitutes forum shopping, an act which violates public policy." Id. The court also noted South Carolina's policy behind statutes of repose:

> [s]ociety benefits when claims and causes are laid to rest after having been viable for [a] reasonable time. When causes of action are extinguished after such time, society generally may continue its business and personal relationships in peace, without worry that some cause of action may arise to haunt it because of some long-forgotten act or omission. This is not only for the convenience of society but also due to necessity. At that point, society is secure and stable.

> Id. (quoting Langley v. Pierce, 438 S.E.2d at 244).

In Thornton v. Cessna Aircraft Co., a South Carolina Federal District Court considered and addressed South Carolina's lack of a products liability statute of repose in deciding whether Tennessee's existing products liability statute of repose could apply in a defective airplane claim. Thornton v. Cessna Aircraft Co., 703 F. Supp. 1228 (D.S.C. 1988). The Tennessee statute provides in relevant part:

> any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition ... must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product whichever is the shorter

> Tenn. Code Ann. § 29-28-103(a).

South Carolina does not have a comparable statute of repose. Id.; see also Mickle v. Blackmon, 166 S.E.2d 173, 190 (S.C. 1969) (noting a plaintiff's product liability action is not dependent on a specified time period). However, the court did not interpret this to mean that to impose a statute of

9

repose in a products liability action would violate South Carolina's public policy. Id. at 1232 (citing Rauton v. Pullman, 191 S.E. at 422). Rather, it found that South Carolina courts have "repeatedly adhered to the lex loci delicti rule to apply foreign law that defeated claims which would have survived under South Carolina law." Id. (citing Algie v. Algie, 198 S.E.2d at 529; Rauton, 191 S.E. at 416, Oshiek v. Oshiek, 136 S.E.2d at 303, McDaniel v. McDaniel, 133 S.E.2d at 809). Furthermore, "the enactment of other statutes of repose does indicate compliance with the state's public policy." Id. at 1231-32; (citing Rauton, 191 S.E. at 422); S.C. Code Ann. § 15-3-545 (1976) (requiring all medical malpractice actions to be commenced no later than six years from alleged date of malpractice); S.C. Code Ann. § 15-3-640 (requiring an action based on the defective or unsafe condition of an improvement to real property be brought no later than eight years following "substantial completion" of the improvement). Furthermore, the Thornton Court did not agree with the state court finding that South Carolina public policy requires some sort of notice provision within its statutes of repose. Thornton, 703 F. Supp. at 1232-34. The text of the "medical malpractice" and "improvement to real property" statutes of repose (cited, supra, and discussed, infra) did not indicate the need for notice. Id. Thus, "while the Tennessee statute of repose provides a defense to the plaintiff's claims which is unavailable under South Carolina law . . . the statute is not contrary to good morals or natural justice or prejudicial to the state's general interest." Id. at 1232. "To the contrary, the available evidence indicates the statute is entirely consistent with the public policy of South Carolina." Id. Analysis of this matter is similar to the analysis in Thornton. Here, the North Carolina statute of repose for products liability actions uses similar language as the Tennessee statute:

No action for the recovery of damages for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

N.C. Gen. Stat. Ann. § 1-50 (1996).

This Court concludes that <u>Thornton</u> controls the legal analysis. Further, this Court finds, consistent with <u>Thornton</u>, that North Carolina's statute of repose does not violate South Carolina's public policy and can therefore be applied to Plaintiffs' claims under the principle of <u>lex loci delicti</u>. Additionally, North Carolina's statute of repose does not violate South Carolina's public policy in that South Carolina's existing statutes of repose are considered to be substantive law, not procedural. Section 15-3-640(6) provides an eight year statute of repose for actions based on defective or unsafe conditions of improvement to real property. S.C. Code Ann. § 15-3-640 (1976). Our courts continue to recognize this statute of repose as creating a substantive right, stating, "[this] statute of repose creates a substantive right in those protected to be free from liability after a legislatively determined period of time." <u>Capco of Summerville, Inc. v. J.H. Gayle Const. Co., Inc.</u>, 628 S.E.2d 38, 41 (S.C. 2006). Similarly, South Carolina's statute of repose for medical malpractice actions has been recently recognized as substantive law. <u>Kerr v. Richland Memorial Hosp.</u>, 678 S.E.2d 809, 810-11 (S.C. 2009) ("the statute of repose portion of section 15-3-545(A) is substantive law, unlike a statute of limitations, which is procedural law"); <u>see also</u> S.C. Code Ann. § 15-3-545(A)(1976) ("In any action . . . to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider . . . acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation . . . or three years from date of discovery . . . not to exceed six years from date of

11

occurrence."); <u>Nash v. Tindall Corp.</u>, 650 S.E.2d at 83 (Ct. App. 2007)(reiterating South Carolina's position that statutes of repose are substantive law). Thus, applying North Carolina's statute of repose for products liability actions as substantive law in South Carolina does not violate South Carolina's public policy.

This Court also finds the Plaintiffs' breach of warranty claim to be subject to dismissal, albeit under a slightly different analysis. In reaching this conclusion, the Court again finds the case of <u>Thornton</u> to be instructive. Assuming that the South Carolina Uniform Commercial Code applies to this cause of action, the Code contains a specific conflict of laws rule which provides:

> [W]hen a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of another state or nation shall govern their rights and duties. Failing an agreement, this title applies to transactions bearing an appropriate relation to this State.

S.C. Ann. § 36-1-105 (1976).

In <u>Thornton</u>, the court found a reasonable, and therefore appropriate, relationship to South Carolina existed because Plaintiff was a resident of South Carolina, purchased the airplane in South Carolina, and permanently stored and maintained the airplane in South Carolina. <u>Id</u>. at 1234. Accordingly, the Fourth Circuit affirmed the district court's analysis that these contacts established the "most significant relationship." <u>Thornton</u>, 886 F.2d at 90 (<u>citing In re Merritt Dredging Co., Inc.</u>, 839 F.2d 203 (4th Cir. 1989) (noting that a majority of courts apply the most significant relationship test to best promote the U.C.C.'s policies of uniformity, predictability and effective facilitation of interstate commercial relations)). The only similarity between the facts in the present case to the facts in <u>Thornton</u> is the status of Plaintiffs and Plaintiffs' decedent as South Carolina residents at the time of the accident. It does not appear from the record that the 1991 Ford Econoline van at issue was

manufactured, purchased, stored, or maintained in South Carolina.[2]  This Court is not sufficiently

persuaded that the residency of Plaintiffs and Plaintiffs' decedent  alone in South Carolina would

trigger application of the law of South Carolina.  The term "appropriate relation" is not defined in

§ 36-1-105, and South Carolina's courts have not interpreted it.   The UCC's Official Comments

provide little guidance, stating only that "the question what relation is 'appropriate' is left to judicial

decision," and that, in defining the term, courts are "not strictly bound by [choice of law] precedents

established in other contexts [because the UCC] is in large part a reformulation and restatement of

the law merchant and of the understanding of a business community which transcends state and even

national boundaries." Merritt Dredging Company, Inc. v. Compliance Marine, Inc., 839 F.2d at 206

(4th Cir. 1988), (quoting U.C.C. § 1-105 official comment 3 (1978)).  Instead, citing the majority

rule, the Merritt Dredging court observed that most often the term "appropriate relation" has been

construed to mean that "the law of the state with the 'most significant relationship' to the matter at

issue is applied." Id. at 206-207.  In this instance, the Court concludes that the most significant

relationship implicates North Carolina law.   There is no evidence in the record that the van was

---

[2]The Court notes that defendant Ford has submitted an affidavit of Ford Motor
Company's Design Analysis Technical Leader, David R. Wotton, which indicates that the
1991 Ford Econoline van at issue here was manufactured in Ohio and initially sold as a new
vehicle in the Commonwealth of Virginia. (Wotton Aff. (Ex. A), ¶ 4) Thereafter, the van was
serviced by a Virginia Ford dealer on four occasions in 1992 and 1993. (Id., ¶ 6) As of the date
of the last service record available to Ford, the vehicle's odometer registered 39,417 miles. (Id.,
¶ 6) Ford also provided a limited written warranty at the time of the original sale of the van that
limited the implied warranties to the exact duration of the written warranties and expired, at the
latest, on September 6, 1997. (Id. ¶ 5) Furthermore, the accident report completed by the North
Carolina State Highway Patrol, attached as Exhibit B and produced by plaintiffs in this case,
indicates the vehicle was registered in the Commonwealth of Pennsylvania at the time of the
accident.  The Court notes this information, but in light if its analysis herein, does not reach this
information, and finds it unnecessary to convert the instant motion from that of a motion to
dismiss to a summary judgment motion.

manufactured, sold or titled in South Carolina. However, it is undisputed that the van in question was involved in an accident while traveling through Samson County, North Carolina, and transporting South Carolina residents. The accident occurred in North Carolina, North Carolina emergency response personnel responded to the scene of the accident, and the passengers involved in the accident were transported to North Carolina medical facilities. Indeed, it appears that the largest number of key witnesses at the trial of this matter reside out-of-state, with the largest majority located in North Carolina. To the extent S.C. Code Ann. § 36-1-105 applies,[3] it is clear that North Carolina bears the most appropriate relationship to the matter at issue. Merritt Dredging, 839 F.2d 203. At least one other court has applied the "appropriate relation" test to similar facts to reach this same conclusion. See White v. American Motor Sales Corp., 550 F. Supp. 1287 (W.D. Va. 1982). In that case, plaintiff alleged defendants were liable for breach of the implied warranties of merchantability and fitness for a particular purpose stemming from burn injuries she sustained in an automobile accident in North Carolina. Applying Virginia law, which at the time provided for application of the U.C.C. "appropriate relation" test, the court concluded that, absent an agreement to the contrary, "the law of the place of the accident has such 'an appropriate relation' to the transaction as to make the law of the place of the accident the controlling law." White, 550 F. Supp. at 1291 (citing Bilancia v. General Motors Corp., 538 F.2d 621 (4th Cir. 1976)). Thus, absent the additional factors recognized in Thornton, the location of the place of the accident bears a "significant" and, therefore, "appropriate" relationship to the proceedings. Because the place of the

---

[3]The Court is cognizant of Defendant Ford's argument that Plaintiffs' allegations fail to state a valid claim for breach of any implied warranty under South Carolina law because Plaintiffs fail to allege that a sale of goods occurred sufficient to trigger application of South Carolina's Uniform Commercial provisions. However, this Court will assume arguendo, without deciding whether a sale of goods occurred, that S.C. Code Ann. § 36-1-105 applies.

14

accident, North Carolina, bears an appropriate relation to these proceedings, North Carolina law should apply. Pursuant to North Carolina law, "[n]o action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C. Gen. Stat. Ann. § 1-50. This statute has been construed to bar untimely claims, regardless of plaintiff's theory of recovery, including breach of implied warranties of merchantability and of fitness for a particular purpose. Vogl v. LVD Corporation, 514 S.E.2d 113, 116 (N.C. Ct. App. 1999) (citing case law and suggesting that breach of warranty claims would fall into the purview of the statute of repose). As the subject accident occurred well beyond six years from the date of the initial purchase of the 1991 Ford Econoline van at issue, Ford is entitled to dismissal of Plaintiffs' breach of implied warranty claims.

After careful review of the record in this case and all claims asserted, accepting the factual allegations in the complaint as true and drawing all reasonable inferences that can be drawn from those allegations to the benefit of Plaintiffs, this Court concludes that Defendant Ford is entitled to dismissal from this suit because Plaintiffs have asserted products liability claims that are barred by the North Carolina statute of repose for products liability actions, which bars claims that arise more than six years after the initial date of purchase. Plaintiffs have presented no facts that this Court could reasonably interpret to bring their claims within six years of the E350's initial purchase for use or consumption. Thus, in accordance with the Federal Rules of Civil Procedure Rule 12(b)(6) standard, Ford is entitled to dismissal of all claims asserted against it in this matter.

## Law/Analysis as to Defendant Snow's Motion to Dismiss (or Transfer)

The Court will now address Defendant Snow's motion to dismiss, or in the alternative, to transfer this case for improper venue. Defendant Snow asserts as a primary argument that venue in the District of South Carolina is improper, requiring dismissal of this action or transfer to federal district court in either North Carolina or Georgia. Plaintiffs disagree. As the Court finds this initial argument by Defendant Snow to be persuasive, the Court does not reach Defendant Snow's additional arguments related to specific claims.

To grant a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the court must find that the venue is improper. See Fed.R.Civ.P. 12(b)(3). When a defendant objects to venue under Rule 12(b)(3), plaintiff bears the burden of establishing that venue is proper. See Motley Rice, LLC v. Baldwin & Baldwin, LLP, 518 F.Supp.2d 688 (D.S.C. 2007) (plaintiff bears the burden of establishing venue).

A case filed in an incorrect venue must be dismissed, or, if in the interests of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406. Venue in this case is governed by 28 U.S.C. § 1391(a), which provides as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

16

In addressing 28 U.S.C. § 1391(a)(1), the court finds this section to be inapplicable as it cannot conclude that all of the Defendants reside in South Carolina. Specifically, the Court concludes that Defendant Snow does not reside in South Carolina. As the Complaint itself alleges, Snow is a Georgia corporation with its principal place of business in Clarke County, Georgia. Its agent for service of process is also located in Georgia. Id. The Complaint does not allege that Snow has ever transacted any business in the State of South Carolina.

For purposes of venue, a corporate defendant may be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 13919( c).[4] After careful review and consideration, this Court is not persuaded that defendant Snow is subject to personal jurisdiction in South Carolina. Two conditions must be met for personal jurisdiction to exist: the plaintiff must: (1) satisfy the applicable long-arm statute; and (2) establish that the exercise of jurisdiction does not overstep the bounds of due process. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000). It does not appear that either condition is met here.

---

[4]This section reads in its entirety as follows:
For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

South Carolina's long-arm statute provides that:

(A)    A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

    (1)    transacting any business in this State;

    (2)    contracting to supply services or things in the State;

    (3)    commission of a tortious act in whole or in part in this State;

    (4)    causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

    (5)    having an interest in, using, or possessing real property in this State;

    (6)    contracting to insure any person, property, or risk located within this State at the time of contracting;

    (7)    entry into a contract to be performed in whole or in part by either party in this State; or

    (8)    production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(B)    When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

S.C. Code Ann. § 36-2-803 (1976).

The Complaint does not allege activities that satisfy any of these enumerated circumstances.[5] It does not allege that Snow transacted any business in South Carolina, entered into any contract to be performed in whole or in part in South Carolina, contracted to supply goods or services in South Carolina, or manufactured or distributed any goods which were used in South Carolina. It does not

---

[5]This case does not involve real property or any policy of insurance, making subsections (a)(5) and (a)(6) inapplicable.

allege that Snow committed any tortious act in whole or in part in South Carolina. In fact, every action attributed to Snow in the Complaint occurred in Georgia. For example, the Complaint states that Snow is a Georgia company with its offices located in Athens, Georgia. (Sec. Amd. Complaint at ¶ 7). It alleges that Snow currently sells tires for automobiles, trucks and trailers "in the state of Georgia." Id. It alleges that two tires on the van were initially purchased from Snow, and that, on July 26, 2007, the Band stopped and purchased another tire at Snow "in Athens, GA." Id. at ¶ 17. Similarly, Snow did not cause tortious injury in South Carolina. The Complaint specifically alleges that the injury occurred "in Sampson County, NC." Id. at ¶ 18. The Complaint does not allege that Snow had any contact whatsoever with the South Carolina. Because the conduct out of which the suit arises does not satisfy any, or fall within any, of the long-arm statutes enumerated categories, this court cannot conclude that personal jurisdiction over Snow exists. See U.S. v. M/V Santa Clara I, 859 F.Supp. 980, 985 (D.S.C. 1994). The alleged acts or omissions by Snow upon which this suit is based did not occur in South Carolina.

Additionally, under applicable law, this Court concludes that the exercise of jurisdiction would offend due process.[6] The United States Supreme Court follows a two-step analysis for determining whether specific jurisdiction can be exercised. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). The first step is the traditional minimum contacts inquiry, which focuses on the defendant's connection with the forum state and the relation between that connection and the litigation. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The

---

[6]Plaintiffs' Complaint does not allege general jurisdiction, nor does the Court believe there would a basis for general jurisdiction. There are no allegations in the Complaint that defendant Snow has an office or agent in South Carolina, nor are there any allegations that it markets in South Carolina.

second step is the fundamental fairness test. Due process requires that the assertion of personal jurisdiction comport with fair play and substantial justice. Id. at 476. As noted previously, this Court concludes that Snow lacks the requisite minimum contacts: it does not maintain an office or agent in South Carolina; it does not own property in South Carolina; it is not registered to do business in South Carolina; and it does not market or advertise in South Carolina. Moreover, as discussed above, the alleged actions which give rise to the lawsuit did not occur in South Carolina. Plaintiffs have not alleged that any event related to this action occurred in South Carolina. The assertion of jurisdiction in this case also fails to comport with traditional notions of fair play and substantial justice as these terms are discussed in caselaw. Although, Plaintiffs allege that jurisdiction is constitutionally reasonable because Snow introduced tires "into the stream of commerce," it appears that Plaintiffs' reliance on this theory is not sufficiently persuasive. Stream of commerce cases often involve the situation in which a manufacturer employs an intermediary or distributor in the forum state and thereby benefits legally from the protection provided by the laws of the forum and economically from indirect sales to forum residents. Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 659 (4th Cir. 1989) (citing Nelson v. Park Industries, Inc., 717 F.2d 1120, 1125-26 (7th Cir.1983); Oswalt v. Scripto, Inc., 616 F.2d 191, 199-200 (5th Cir.1980)). That situation is not present here. There are no allegations that Snow employs any distributors or retailers in South Carolina, nor are there allegations that it advertises or solicits sales in South Carolina. Although, Defendant Snow acknowledges that there exists the possibility that a person who purchased tires from Snow in Georgia might operate a motor vehicle in South Carolina, it asserts, and this Court agrees that possibility, however, is one in which a third party would fortuitously transport Snow's product into South Carolina, not one in which Snow is regularly selling tires in

20

South Carolina. As such, the Court cannot conclude that the stream of commerce theory would apply to the facts of this case. See Lake Shore, 886 F.2d at 659.

Moreover, a stream of commerce theory cannot supplant the requirement that a defendant in some way purposefully avail itself of forum state law. Id. at 658. Foreseeability alone "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." World-Wide Volkswagen, 444 U.S. at 295. If it were, a "seller of chattels would in effect appoint the chattel his agent for service of process" and his "amenability to suit would travel with the chattel." Id. at 296; see also DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284-85 (3rd Cir.1981). Accordingly, the placement of a product into the stream of commerce, without more, is *not* an act of the defendant purposefully directed to the forum state. Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solana County, 480 U.S. 102, 112 (1987). There must be some additional conduct to demonstrate an intent to serve the market of the forum state. Brown v. Geha-Werke GmbH, 69 F.Supp.2d 770, 776 (D.S.C. 1999). Here, there is no such additional conduct, and the Court is not sufficiently persuaded that the stream of commerce theory would authorize the exercise of personal jurisdiction.

In light of the above analysis and the Court's conclusion that Snow cannot be deemed to reside in South Carolina, as it is not subject to personal jurisdiction here (see 28 U.S.C. § 1391( c)) venue under 28 U.S.C. § 1391(a)(1) is not appropriate as all of the Defendants do not reside in South Carolina.

The Court must next consider whether venue is appropriate in South Carolina under 28 U.S.C. § 1391(a)(2). 28 U.S.C. § 1391(a)(2) provides that venue may be appropriate "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated." After consideration of the Complaint and viewing the facts in the light most favorable to the Plaintiffs, the Court concludes that Venue in the District of South Carolina is also improper under 28 U.S.C. 1391(a)(2).

A substantial part of the events giving rise to Plaintiffs' claims did not occur in South Carolina. Plaintiffs have not alleged that *any* action or omission related to their claims occurred in South Carolina. Instead, Plaintiffs have specifically alleged that the sale of tires by Snow occurred in Georgia, (Sec. Amd. Complaint at ¶ 17), and that the injury occurred in North Carolina. Id. at ¶¶ 18-20. Venue for this action would therefore be proper in either Georgia or North Carolina, but not in South Carolina. This Court concludes that in light of the facts alleged, and the location of the accident occurrence, venue is most appropriate in North Carolina. Accordingly, the Court deems it appropriate to transfer this case to that jurisdiction.[7]

The facts asserted by Plaintiffs, viewed in the light most favorable to them, do not establish that venue in South Carolina is appropriate. Accordingly, this civil action is hereby transferred to the Southern Division of the North Carolina Eastern District Court.

## Conclusion

For the foregoing reasons, the undersigned **GRANTS** Defendant Ford's Motion to dismiss the Plaintiff's claims raised against it in the Second Amended Complaint. (Doc. #40). Additionally, the Court **GRANTS** Defendant Snow's Motion to dismiss, or in the alternative to transfer to the

---

[7]Venue in a district in which *any* defendant resides is available only if there is no other district in which the action may be brought. 28 U.S.C. § 1391(a)(3). As the Court finds that appropriate venue may be found under 28 U.S.C. § 1391(a)(2), that situation is not present here.

Case 7:10-cv-00142-BO   Document 62   Filed 07/09/10   Page 22 of 23

extent outlined herein. (Doc. # 38). Specifically, this civil action is transferred to the United States District Court for the Eastern District of North Carolina, Southern Division.

**IT IS SO ORDERED.**

s/ Terry L.  Wooten
Terry L. Wooten
United States District Court Judge

July 9, 2010
Florence, SC